UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

SLATE BROWN,

                                        Plaintiff,

                        -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                                        Defendant.
--------------------------------------------------------------------X

For Online Publication Only

**ORDER**
17-CV-03685 (JMA)

**FILED**
**CLERK**

2/7/2019 4:01 pm

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES**

Charles E. Binder
Law Offices of Charles E. Binder and Harry J. Binder
485 Madison Ave. Suite 501
New York, NY 10022
212-677-6801
*Attorney for Plaintiff*

Sean P. Greene
United States Attorney's Office, EDNY
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
718-254-6484
*Attorney for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Slate Brown ("Plaintiff") seeks review of the final determination by the Commissioner of Social Security, reached after a hearing before an administrative law judge, denying Plaintiff Supplemental Security Income ("SSI") under the Social Security Act.  The case is before the Court on the parties' cross-motions for judgment on the pleadings.  Because the administrative law judge's decision was supported by substantial evidence and applied the proper legal standards, Plaintiff's motion for judgment on the pleadings is DENIED, and defendant's cross-motion is GRANTED.

# I.  BACKGROUND

## A.  Procedural History

On August 30, 2013, Plaintiff filed for SSI, alleging disability as of September 5, 2012 due to a disc bulge at L4-L5 and disc herniation at L5-S1 in Plaintiff's lumbar spine.  (Tr. 67, 138, 175.[1])  Following denial of his SSI application, Plaintiff requested a hearing and appeared with his attorney for an administrative hearing before Administrative Law Judge Patrick Kilgannon (the "ALJ") on October 8, 2015.  (Tr. 68–70, 77–79, 37–58.)

In a decision dated January 13, 2016, the ALJ denied Plaintiff's claim, finding that he was not disabled for purposes of receiving SSI benefits under the Social Security Act.  (Tr. 22–36.)  Plaintiff timely filed a request for review before the Appeals Council.  (Tr. 20–21.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 17, 2017.  (Tr. 1–6.)  This appeal followed.  (ECF No. 1.)

## B.  Plaintiff's Background and Testimony

Plaintiff was born on October 27, 1962 and was 51 years old when he filed the instant application for SSI.  (Tr. 138.)  In an undated disability report, Plaintiff indicated that he worked as a handyman from 1994 until 2000, and then as a laborer from 2001 until September 2012.  (Tr. 176.)  In a function report dated November 15, 2013, Plaintiff stated that he had difficulty walking and getting dressed, and could not lift, stand in one place, kneel, bend, or squat.  (Tr. 184–92.)  He could walk only 30 feet without having to stop to rest.  (Tr. 191.)  He could bathe and groom himself, and use the toilet, but did so slowly.  (Tr. 185–86.)  He did not cook any meals and ate only fast food only because he was homeless.  (Tr. 186, 188.)  When he traveled, he rode in a car or took public transportation.  (Tr. 187.)  He spent a lot of time watching

---

[1] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner.  (ECF No. 18.)

television and texting on his telephone.  (Tr. 188–89.)  He noted that he was under significant stress due to his homelessness.  (Tr. 192.)

Plaintiff stated that his pain was in his lower back, near the base of his spine.  (Tr. 193.) When he bent slightly, he felt a stabbing pain and heard popping sounds coming from his back. (Tr. 192.)  He stated that he was in pain all day, every day, and the pain worsened with movement.  (Tr. 193.)  He was taking pain medications for the pain, including cyclobenzaprine, meloxicam, and oxycodone.  (Id.)  He said that the medications relieved his pain for two hours at a time and made him sleepy.  (Tr. 193–94.)

At the administrative hearing held on October 8, 2015, Plaintiff testified that he was last employed in 2005 as a porter/cleaner in a senior citizen home.  (Tr. 43–44.)  He injured his back in 2000 while pulling 300 feet of hose to spray pesticides.  (Tr. 46.)  He testified that he could not work because bending, twisting, and leaning caused pain, and his sciatica would flare up. (Tr. 47.)  He testified that he could sit for half an hour, walk for about a block, and stand for a little more than 30 minutes.  (Tr. 47–48.)  He could not lift a gallon of milk without pain.  (Tr. 48.)  He had difficulty sleeping at night due to pain, and after a bad night's sleep, he felt drowsy and irritable.  (Tr. 49.)  He napped during the day for four hours at a time.  (Id.)  He had trouble tying his shoelaces, getting dressed, doing dishes, and cooking for himself due to his back pain. (Tr. 49.)  He testified that he spent his days sitting around his apartment and watching television. (Tr. 50.)  His pain medications caused side effects including migraine headaches, which occurred three times per week.  (Tr. 52.)

## C. Relevant Medical Evidence

### a. Plaintiff's MRIs

In November 2012, Plaintiff underwent a lumbar spine magnetic resonance imaging (MRI) study. The MRI revealed bulging and herniation at the L5-S1 level with mild mass effect on the left S1 nerve root and mild to moderate bilateral neural foraminal stenosis. (Tr. 314.) The MRI also showed facet arthropathy and bulging causing mild spinal canal stenosis and mild-to-moderate neural foraminal stenosis at the L4-L5 level. (Id.)

In January 2014, Plaintiff underwent another MRI study of his lumbar spine. (Tr. 308–14, repeated in part at Tr. 328–32.) In a questionnaire completed prior to the study, Plaintiff indicated that his back pain was the result of a June 28, 2000 work injury. (Tr. 309.) He also stated that he could not bend, lift, or sleep on his side. (Tr. 311.) The MRI study showed disc bulging at the L4-L5 level, mild osteophytic ridging extending into the neural foramen, ligamentum flavum thickening, moderate facet arthrosis, mild thecal sac compression, and mild to moderate bilateral foraminal stenosis, a small posterior disc protrusion at the L5-S1 level with an annular tear, and mild-to-moderate foraminal stenosis at the L4-L5 and L5-S1 levels. (Tr. 313.)

### b. Michael Lee, M.D.

In June 2013, Plaintiff saw his treating internist, Dr. Michael Lee, for a follow up on his ongoing medical conditions, including the lumbar disc herniation. (Tr. 292–299.) Plaintiff reported back pain that occasionally radiated to his buttocks and thighs as well as occasional numbness in his legs. (Tr. 293.) Plaintiff described his pain as fairly constant and rated his pain as 9 to 9.5 on a scale of 0-10, which worsened when sitting for prolonged periods of time, bending, lifting, walking, and exercising. (Id.) His medication included cyclobenzaprine

(Flexeril), meloxicam (Mobic), and hydrocodone-acetaminophen. Plaintiff reported that these medications provide limited benefit. (Id.) Dr. Lee's straight leg raise test revealed mild pain, with pain in the right leg worse than the left leg. (Tr. 294.) Plaintiff's neurological testing was normal, showing no motor or sensation deficits. (Id.) Dr. Lee also noted that Plaintiff had a normal gait and stance. (Id.) Dr. Lee assessed a lumbar disc herniation, refilled Plaintiff's cyclobenzaprine and meloxicam, and prescribed Percocet. (Tr. 296.) He noted that Plaintiff had been referred to physical therapy, but had not started yet due to his work schedule. (Id.) At a follow-up examination in July 2013, Dr. Lee noted that Plaintiff was regularly exercising but had still not gone for physical therapy. (Tr. 282, 287.)

In September 2013, Plaintiff informed Dr. Lee of back pain, but denied recent radiation of pain into the buttocks and legs and numbness in the legs. (Tr. 274.) Plaintiff again described his pain as fairly constant but noted that his pain level was up to 9 to 10 on a scale of 0-10. (Id.) Dr. Lee once again found mild pain upon straight leg raise testing, and noted 4+/5 strength in Plaintiff's legs. (Tr. 275.) Plaintiff reported that he was benefiting from Percocet. (Tr. 278.)

In October 2013, Plaintiff continued to complain of back pain. (Tr. 267–72.) Dr. Lee again noted that Plaintiff's gait and stance were normal. (Tr. 268.) Dr. Lee also noted that Plaintiff had no sensory abnormalities and continued to have mild pain with a straight leg raise testing and slightly diminished motor strength (4+/5) in his legs. (Id.)

Later that month, Dr. Lee provided a medical source statement in which he opined that Plaintiff could stand for 1-2 hours, sit for 2-4 hours, and walk for 2-4 hours during an 8-hour workday. (Tr. 302.) He also opined that Plaintiff was moderately limited in his ability to climb stairs, and could only lift and carry up to 10 pounds occasionally. (Id.) He noted that Plaintiff was expected to have these limitations for the rest of his life, and that his condition was not

expected to improve. (Id.) Physical therapy was recommended. (Id.) No significant changes were found in Plaintiff's condition at a follow-up with Dr. Lee on November 18, 2013. (Tr. 246–252.)

### c. Gus Katsigiorgis, D.O.

In February 2014, Gus Katsigiorgis, D.O., provided a medical source statement based on one examination of Plaintiff. (Tr. 303.) Dr. Katsigiorgis opined that Plaintiff could stand, walk, and sit for 1-2 hours during an 8-hour workday. (Id.) He also opined that Plaintiff was moderately limited in his ability to climb stairs, very limited in his ability to push or pull, and could lift and carry only up to 10 pounds occasionally. (Id.) Dr. Katsigiorgis determined that Plaintiff was not capable of working as of the time he rendered the statement, and that he needed an MRI and physical therapy. (Id.)

### d. Amitkumar H. Bharatia, Physical Therapist

In March 2014, Plaintiff had an initial evaluation with physical therapist Amitkumar H. Bharatia. (Tr. 316–17.) Plaintiff reported "constant pain and stiffness on his lower back since 2000," and explained that he had been working for a pesticide company at that time and had to pull a hose for six years. (Tr. 316.) His symptoms included hearing a clicking sound on the left side of his lower back when he walked, and "sharp stabbing" pain when he twisted his lower back. (Id.) He reported difficulty with prolonged walking, standing, sitting, bending, lifting over ten pounds, and putting his shoes on. (Id.)

PT Bharatia found moderate tenderness and reduced range of motion in his lumbar spine, and reduced muscle strength. (Id.) He assessed lumbar sprain/strain and recommended a month of physical therapy at the rate of three times a week. (Id.)

Later that month, during physical therapy sessions with Bharatia, Plaintiff reported constant and increased pain that limited his daily activities. (Tr. 318, 320). During four follow-up appointments over the next month, Plaintiff continued to complain of lower back pain and "popping" in his left hip while walking. (Tr. 321–24.)

### e. Steven Parry, D.O.

In April 2014, Plaintiff saw Dr. Steven S. Parry. (Tr. 336–38.) Plaintiff complained of difficulty sleeping due to back pain and reported numbness in his left toes and from his right elbow down. (Tr. 337.) He described having these symptoms for the past four months and reported that he was out of work. (Id.) Plaintiff also described a "popping" sensation in his back. (Tr. 341.) Dr. Parry observed that Plaintiff had some difficulty getting on and off the examination table and stated that the straight leg test was negative. (Tr. 337.) Dr. Parry diagnosed lumbar neuropathy and degenerative disc disease, and referred Plaintiff for an electromyography study (EMG) and pain management evaluation. (Id.) Dr. Parry advised Plaintiff that he would not prescribe narcotics and referred him to pain management. (Tr. 340–41.) Plaintiff returned to Dr. Parry four days after the initial appointment, reporting ongoing lower back pain and was prescribed meloxicam (Mobic), cyclobenzaprine (Flexeril), and an additional medication that is illegible in the treatment notes. (Tr. 340.)

In October 2014, Plaintiff returned to Dr. Parry and complained of pain, tingling in his arms and numbness in his left toes, and reported that he was taking meloxicam (Mobic) sparingly. (Tr. 339.) Dr. Parry found that Plaintiff had a negative straight leg raise test, no evidence of paraspinal spasms, and 78% range of motion in all planes. (Id.) He again referred Plaintiff to pain management for his requests for prescription pain medications. (Id.)

In October 2015, Dr. Parry completed a spinal impairment questionnaire, in which he stated that he began treating Plaintiff in April 2014 for lumbar spine neuropathy and saw him twice a year. (Tr. 346–51.) Dr. Parry noted that a January 2014 MRI showed mild-to-moderate bilateral foraminal stenosis at the L4-L5 and L5-S1 levels. (Tr. 346.) He noted that Plaintiff's symptoms were constant and sharp pain on his left side and some numbness in his toes. (Id.) Clinical findings revealed full range of motion and no tenderness, muscle spasm, sensory loss, reflex changes, muscle atrophy, motor loss, trigger points, muscle weakness, swelling, or abnormal gait. (Tr. 347.) Plaintiff reported that he was taking meloxicam (Mobic), methylprednisolone (Medrol), and cyclobenzaprine (Flexeril). (Tr. 348.) Dr. Parry opined that Plaintiff could sit for more than 6 hours in an 8-hour workday, and stand or walk for 2 hours. (Tr. 348.) Dr. Parry stated that he would defer to opinions from Plaintiff's neurologists or orthopedists regarding Plaintiff's ability to lift and carry, and noted no significant limitations in reaching, handling, or fingering. (Tr. 349–50.) He opined that Plaintiff's pain would likely increase in a work environment, and that his symptoms of pain would frequently interfere with his attention and concentration. (Tr. 350.) He also opined that Plaintiff would likely be absent once a month due to his impairment. (Tr. 351.)

**f. Syeda Asad, M.D.**

In November 2015, Plaintiff underwent a consultative orthopedic examination with Dr. Syeda Asad. (Tr. 352.) Plaintiff complained of lower back pain since 2000 that was caused by pushing and pulling 300 feet of hose. (Id.) Plaintiff described his pain as sharp, and sometimes a throbbing and burning pain, which radiates to his bilateral buttocks, thighs, and lower extremities. (Id.) He rated the pain as an 8 on a scale of 0-10, which improved with medication and rest. (Id.) He also stated that the pain's severity wakes him up during sleep and renders him

unable to twist his back. (Id.) He stated he previously tried physical therapy, but that it worsened his pain. (Id.) Plaintiff reported to Dr. Asad that he had an MRI showing a disc bulge and herniation at the level of L5 and S1 and moderate bilateral foraminal stenosis and moderate neutral foraminal stenosis at the level of L4 and L5. (Id.) He denied being able to sit for a long period of time, or to walk. (Id.)

Dr. Asad observed that Plaintiff's gait and stance were normal, and that he was able to walk on heels and toes without difficulty. (Tr. 353.) Plaintiff was able to squat halfway, used no assistive device, and needed no help changing for the exam or getting on and off the exam table. (Id.) Plaintiff was also able to rise from a chair without difficulty. (Id.) Examination revealed full flexion, extension, lateral flexion, and rotary movements, and no pain, spasm, or trigger points in Plaintiff's cervical spine. (Id.) Flexion and extension of Plaintiff's lumbar spine were limited to 45 degrees, and lateral flexion and rotary movements were limited to 20 degrees. (Tr. 354.) There was no spinal or paraspinal tenderness, no spasm, negative straight leg raise testing, and no trigger points. Dr. Asad assessed lower back pain, and noted that Plaintiff's prognosis was good. (Id.) She opined that Plaintiff had mild limitations for squatting, kneeling, bending, walking, and standing for a long period of time due to lower back pain, but had no limitations in lifting, carrying, or pushing objects. (Id.)

**D.  The ALJ's Decision**

The ALJ issued his decision on January 13, 2016, applying the five-step process described below, pursuant to 20 C.F.R. § 416.920. (Tr. 23–32.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his SSI application date of August 30, 2013. (Tr. 27.) At step two, the ALJ found that Plaintiff's lumbar degenerative disc disease was severe. (Id.) At step three, the ALJ determined that Plaintiff's impairments, alone

or in combination, did not meet or medically equal the severity of any of the regulations' listed impairments. (Tr. 27–28.) Specifically, the ALJ considered Listing 1.00 for musculoskeletal impairments and Listing 1.04 for spinal disorders, spinal arachnoiditis, or spinal stenosis with pseudoclaudication. (Id.)

The ALJ then addressed step four, first considering Plaintiff's residual functional capacity ("RFC"). An RFC determination identifies what work a claimant can still perform, despite his limitations. See C.F.R. § 416.945(a). The ALJ found that Plaintiff retained the RFC to perform light work,[2] except that Plaintiff could only occasionally balance, stoop, kneel, crouch, crawl, or climb ladders, ropes, scaffolds, ramps, and stairs. (Tr. 28–30.)

Specifically, in considering Plaintiff's limitations, the ALJ made various observations about Plaintiff's testimony and reviewed Plaintiff's medical records. (Tr. 28–30.) The ALJ afforded "limited weight" to Dr. Lee's treating source opinion because it was "not supported by the very limited and conservative care received," which included prescription of some pain medications and Plaintiff's participation in a limited amount of physical therapy, and the "clinical signs [were] mixed and diagnostic tests include[d] mild findings." (Tr. 29.) Additionally, the ALJ gave "limited weight" to Dr. Parry's opinion because it was "not consistent with the limited treatment record" and "[Plaintiff's] care was extremely conservative and limited." (Tr. 29.) The ALJ also found that "the record suggests no significant limitations as the [Plaintiff] had a nearly 14-year gap between a work-related incident and treatment with Parry." (Tr. 29-30.) Instead, the ALJ gave "great weight" to Dr. Asad's opinion because Dr. Asad's opinion was "consistent with the limited and conservative treatment record" and

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b); Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (July 2, 1996).

"supported by the exam findings, which include some limitations in range of motion, but full muscle strength and no sensory abnormalities." (Tr. 30.)

Upon consideration of the evidence, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. (Tr. 30.) Specifically, Plaintiff testified that he has not worked since 2005 but that he was previously employed as a porter, did construction cleanup work, and drove a truck. (Id.) Plaintiff also testified that he has pain from the waist down, limitations in sitting, standing, walking, lifting, stooping, and bending. (Id.) The ALJ nevertheless found that Plaintiff's "extremely remote onset" for his back pain, followed by the conservative and limited treatment many years later, and Plaintiff's "spotty" work and earnings record fail to support his allegations of disability that would preclude all vocational activity. (Id.) Based on the RFC, the ALJ concluded that Plaintiff did not have any past relevant work. (Tr. 30–31.)

At step five, the ALJ relied on the testimony of a vocational expert to determine that there are jobs that exist in significant numbers in the national economy that the claimant can perform, including work as a cashier, cafeteria attendant, and final assembler. (Tr. 31.) Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act from August 30, 2013 through the date of his decision. (Tr. 31–32.)

## II. DISCUSSION

### A.  Social Security Disability Standard

Under the Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. See 20 C.F.R. § 416.920. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 416.920(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

**B. Scope of Review**

In reviewing a denial of disability benefits by the SSA, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted when the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the law and regulations. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); see Rosa v. Callahan, 168 F.2d 72, 82–83 (2d Cir. 1999). Remand is also appropriate when an ALJ overlooks an important piece of evidence. See Carnevale v. Gardner, 393 F.2d 889, 890–91 (2d Cir. 1968) (directing remand to allow the Secretary to consider a major piece of evidence ignored by the hearing examiner); see also 42 U.S.C. § 405(g) (permitting the court to order the Commissioner to review additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding").

## C. The ALJ's RFC Determination is Based on Substantial Evidence

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (internal citation omitted).

In determining a claimant's RFC, "[t]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). An RFC determination must be affirmed on appeal where, as here, it is supported by substantial evidence in the record. Barry, 606 F. App'x at 622 n.1.

Plaintiff argues that the ALJ's RFC finding with additional postural limitations is not supported by substantial evidence because the ALJ improperly gave limited weight to the treating source opinions provided by Drs. Lee and Parry and great weight to the consultative examiner opinion provided by Dr. Asad. (Pl. Br. 6–11.) Plaintiff also argues that the ALJ failed to set forth his credibility determination of Plaintiff with sufficient specificity. (Pl. Br. 11–13.) Both arguments are unavailing.

### 1. The ALJ Properly Weighed the Medical Opinion Evidence in the Record

An ALJ's decision regarding the weight to be accorded to each medical opinion in the record and how to reconcile conflicting medical opinions is governed by the treating physician

rule. 20 C.F.R. § 416.927(c)(2). According to the treating physician rule, if a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. § 416.927(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

However, an ALJ may discount a treating physician's opinion when that opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record, or the evidence otherwise supports a contrary finding. See 20 C.F.R. § 416.927(c)(2). The ALJ is required to give "good reasons" in support of the determination. See Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998).

### a. The ALJ Appropriately Assigned Limited Weight to the Treating Physicians' Opinions

Plaintiff contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly discredited Drs. Lee's and Parry's opinions "exclusively on the basis of plaintiff's course of treatment" and because "[t]here is no medical authority in the record contradicting the opinions" of the treating physicians. (Pl. Mem. 6–11.) However, the ALJ articulated three other "good reasons," in addition to Plaintiff's course of treatment, for assigning limited weight to the treating physicians' opinions and the record does, in fact, contain evidence contradicting those opinions.

First, the ALJ noted the mixed clinical signs and that the diagnostic tests revealed only mild findings. (Tr. 29.) Indeed, the diagnostic studies—two MRIs performed in November 2012 and January 2014—revealed only mild and mild-to-moderate findings with respect to Plaintiff's lumbar spine and no evidence of instability. (Tr. 313; 314.) The clinical findings in the record

were also normal. Specifically, although Dr. Parry, Dr. Asad, and PT Bharatia found reduced range of motion in Plaintiff's lumbar spine, they all observed that Plaintiff walked with a normal gait. (Tr. 315–16; 347; 353.) Additionally, Drs. Parry and Asad found straight leg raise testing to be negative on several occasions, (Tr. 337; 353), and Dr. Lee consistently noted only mild pain upon straight leg raise testing. (Tr. 268; 275; 293.) And, while Dr. Lee found slightly reduced strength in Plaintiff's legs, (Tr. 268), neither Dr. Asad nor Dr. Parry found any muscle spasm, sensory loss, reflex changes, muscle atrophy, motor loss, trigger points, muscle weakness, swelling, or abnormal gait. (Tr. 347; 353.) Indeed, in a medical questionnaire dated August 2015, Dr. Parry noted that there were "no clinical findings to support [his] assessment." (Tr. 347.)

Second, the ALJ noted that Dr. Parry's opinion regarding Plaintiff's extreme limitations on his ability to stand and walk was not consistent with the aforementioned evidence in the record. (Tr. 29–30).

Third, the ALJ stated that the fourteen-year gap between the work-related incident that caused Plaintiff's injury and Plaintiff's initial treatment with Dr. Parry underscored the lack of evidence of such limitations. (Tr. 30.) For these "good reasons," the ALJ assigned limited weight to opinions of treating physicians Drs. Lee and Parry. See 20 C.F.R. § 416.924(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the Commissioner] will give to that medical opinion."); see also Halloran, 262 F.3d at 31 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . the opinion will not be deemed controlling.").

Plaintiff further argues that, even if the treating physicians' opinions are not entitled to controlling weight, the ALJ's failure to comprehensively consider the 20 C.F.R. § 404.1527

factors was "highly prejudicial."[3]  (Pl. Mem. 11.)  When a treating physician's opinion is not given controlling weight, the ALJ considers, <u>inter alia</u>, the "[l]ength of the treatment relationship and the frequency of examination"; the "[n]ature and extent of the treatment relationship"; the "relevant evidence . . . , particularly medical signs and laboratory findings," supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues.  20 C.F.R. § 416.927(c)(2)(i)(ii), (3)-(5).  Plaintiff contends that the ALJ did not consider that Drs. Lee and Parry "treated [Plaintiff] regularly over a period of time, . . . that the nature of the treatment focused on Plaintiff's dialing spinal impairments, . . . [that the doctors] provided support for their opinions[,] [and that] those findings are consistent with each other and the underlying record."  (Pl. Mem. 11.)

At step four of the analysis, the ALJ stated he considered the opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927.  (Tr. 28.)  Contrary to Plaintiff's assertion, the ALJ considered the length and frequency of treatment by Drs. Lee and Parry, noting that Plaintiff saw Dr. Lee approximately six times in 2013 and began seeing Dr. Parry in April 2014 on a limited basis.  (<u>See</u> Tr. 28–29.)  The ALJ also considered the nature and extent of the treatment relationship between Plaintiff and his treating physicians, specifying that Plaintiff's appointments with Drs. Lee and Parry involved Plaintiff's back pain, the treatments Plaintiff received, and the examinations Drs. Lee and Parry performed.  (<u>See</u> Tr. 28–29.)  And, as previously discussed, the ALJ concluded that the treating physicians' opinions were not supported by their relatively mild clinical findings and were not consistent with the evidence in the record.  (<u>See</u> Tr. 29–30.)  The ALJ, thus, evaluated the treating source opinions according to the regulations and acted appropriately in assigning them little weight.

---

[3] 20 U.S.C. §§ 404.1527 and 416.927 are identical, but § 416.927 is the operative provision because Plaintiff's SSI claim is governed by Title XVI of the Act.

### b. The ALJ Appropriately Assigned Great Weight to the Consultative Examiner's Opinion

The ALJ ended up affording great weight to Dr. Asad's opinion. The opinion of a consultative examiner can constitute substantial evidence in support of an ALJ's RFC determination if it is supported by the evidence in the record. See Pelham v. Astrue, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order). Here, the ALJ concluded that that Dr. Asad's opinion of no more than mild limitations was consistent with her clinical findings and the totality of the evidence in the record and, thus, constituted substantial evidence in support of the RFC finding of light work. (Tr. 30.) Plaintiff, however, contends that it was improper to give great weight to Dr. Asad's opinion for three reasons. All three reasons are unavailing.

First, Plaintiff argues that the ALJ mistakenly believed Dr. Asad, a specialist in nuclear medicine, to be a specialist in orthopedics. (Pl. Mem. 9.) However, there is no indication that the ALJ was mistaken as to Dr. Asad's specialty. In his decision, the ALJ stated that Dr. Asad performed an "orthopedic evaluation"—not that Dr. Asad was an orthopedist. (Tr. 30.) And, not only does Dr. Asad's report identify her as a specialist in nuclear medicine, (Tr. 354), but the ALJ explicitly acknowledged that Plaintiff took issue with Dr. Asad's medical specialty and made clear that he considered that objection while assessing Dr. Asad's report. (See Tr. 30, Tr. 238–39).

Second, Plaintiff contends that it was improper for the ALJ to give great weight to Dr. Asad's opinion because she was not provided with Plaintiff's MRI findings despite 20 C.F.R. § 416.917, which states, "[the Commissioner] will give the examiner any necessary background information about your condition." (Pl. Mem. 9.) It was also improper, according to Plaintiff, that Dr. Asad diagnosed him with lower back pain "being unaware of the significant disc abnormalities in the lumbar spine shown on the MRI." (Id.) Plaintiff relies on Burgess, 537

F.3d at 129, for the proposition that the opinion of a consultative examiner who did not review MRI findings cannot be considered substantial evidence. (Id.)

Burgess, however, is distinguishable. In Burgess, the ALJ's decision largely relied on the opinion of a non-examining consultative physician who testified at the claimant's hearing that there was "no report of an MRI of the lumbar spine" in the record and, thus, "no objective reason" why the claimant could not walk, sit, and stand for six hours. 537 F.3d, at 125, 130. The Second Circuit did not view this opinion as substantial evidence because the non-examining physician and the ALJ both overlooked the MRI report in the record. Id. at 130 ("[T]he ALJ was unaware of the presence—and the contents—of the MRI Report, which was in the administrative record."). The court also did not view the opinion of an examining physician as substantial evidence even though that doctor's report stated that claimant had an "MRI with abnormalities reported." Id. at 132. Critically, the court reasoned that despite mention of claimant's MRI in the examining doctor's report, it nevertheless "appear[ed] . . . [that the examining doctor did not] read the MRI Report as he neither mentioned it in the 'Laboratories' section of his report *nor reflected any awareness of the MRI Report's findings* that Burgess had a protruding disc or of [the treating physician's] opinion as to the painful effect of the protrusion." Id. (emphasis added).

Here, however, Dr. Asad's orthopedic examination report reflects awareness of Plaintiff's MRI findings. Unlike in Burgess, where the court noted that neither the examining nor non-examining physicians appeared to know that the claimant had a protruding disc in his back, Dr. Asad's report states: "According to [Plaintiff], he had an MRI which shows disc bulge and disc herniation at the level of L5 and S1 and moderate bilateral foraminal stenosis and moderate neural foraminal stenosis at the level of L4 and L5." (Tr. 352.) Also, unlike the ALJ in Burgess,

the ALJ cited Plaintiff's MRI reports in his decision.  (See Tr. 29.)  Thus, it is clear that Dr. Asad and the ALJ were aware of Plaintiff's MRI findings.  It follows that the ALJ did not err by viewing Dr. Asad's opinion as substantial evidence in support of the RFC determination.

Third, Plaintiff contends that Dr. Asad's finding of "mild limitations," without specifying the degree of limitation, is too vague to support the ALJ's RFC assessment.  (Pl. Mem. 9.)  In support of his argument, Plaintiff cites Curry v. Apfel for the proposition that the "use of the terms 'moderate' and 'mild,' without additional information, does not permit the ALJ, a layperson notwithstanding [his] considerable and constant exposure to medical evidence, to make the necessary inference that [Plaintiff] can perform the exertional requirements of sedentary work."  209 F.3d 117, 123 (2d. Cir. 2000) (emphasis added).

Here, however, Dr. Asad did not merely opine that Plaintiff had "mild limitations." Rather, Dr. Asad's orthopedic examination report shows a thorough physical examination of Plaintiff and contains a specific report of that examination.  See Ashby v. Astrue, No. 11-CV-02010, 2012 WL 2477595, at *12 (S.D.N.Y. Mar. 27, 2012) (report and recommendation), adopted by 2012 WL 2367034 (S.D.N.Y. June 20, 2012) (finding no error in the ALJ's reliance on the consultative examiner's report, which noted "mild restrictions" and "moderate limitations," because his report "evidences a thorough physical examination of [the claimant] and includes a highly specific report of the examination").  In addition to outlining Plaintiff's medical and social history, identifying Plaintiff's medications and the findings of an MRI, and describing Plaintiff's activities of daily living, Dr. Asad directly observed Plaintiff's ability to walk, stand, squat, and get on and off the examination table.  (Tr. 352–353.)  More importantly, Dr. Asad examined Plaintiff's musculoskeletal system, and recorded detailed findings relating to, inter alia, Plaintiff's spinal flexion, the range of motion of Plaintiff's joints, and the strength and

condition of Plaintiff's extremities. (Tr. 353–354.) In light of these findings, Dr. Asad opined that "[t]here are mild limitations for squatting, kneeling, bending, walking, and standing for a long period of time due to [Plaintiff's] lower back pain." (Tr. 354.) In Curry, by contrast, the consulting physician conducted a more limited examination of the claimant and described his findings in more general terms. 209 F.3d at 120; see Ashby, 2012 WL 2477595, at *12.

In any event, the reasoning of Curry has limited application. In Curry, the Commissioner had the burden of establishing the claimant's RFC—a burden that has since been abrogated by a subsequent regulation. See 20 C.F.R. 404.1560(c)(2). The Second Circuit has clarified that there is only a limited burden shift to the Commissioner at step five. Poupore, 566 F.3d at 306 ("Under the applicable new regulation, the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity.") (citing 20 C.F.R. § 404.1560(c)(2)); see Cataneo v. Astrue, No. 11-CV-2671, 2013 WL 1122626, at *22 (E.D.N.Y. Mar. 17, 2013).

Further, Dr. Asad's opinion is consistent with the other evidence in the record, as the ALJ noted in his decision. (Tr. 30); see Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 34 (2d Cir. 2013) (summary order) (determining that a consultative physician's opinion that plaintiff had "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance" was, together with other evidence, sufficient to support RFC finding); see also Lewis v. Colvin, 548 F. App'x 675, 677 (2d Cir. 2013) (summary order) (finding that RFC determination of light work was supported by consultative physician's assessment that plaintiff had "mild limitations for prolonged sitting, standing and walking," and needed to avoid "heaving, lifting, and carrying," together with other evidence in the record).

For these reasons, the Court finds no error in the ALJ's reliance on Dr. Asad's report.

## 2. The ALJ Set Forth His Credibility Determination of Plaintiff with Sufficient Specificity

Plaintiff contends that the ALJ did not set forth his credibility determination with sufficient specificity. (Pl. Mem. 11–12.) "A finding that the witness is not credible must . . . be set forth with sufficient specificity to permit intelligent plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260–61 (2d Cir. 1988). The regulations set forth factors that are relevant in assessing a claimant's credibility: (i) the claimant's daily activities, (ii) the location, duration, frequency, and intensity of pain or other symptoms, (iii) the precipitating and aggravating factors, (iv) the type, dosage, effectiveness, and side effects of medication, (v) treatment other than medication used for relief of paid or other symptoms, (vi) any measures used to relieve pain or other symptoms, and (vii) other factors concerning functional limitations and restriction due to pain or other symptoms. 20 C.F.R. § 416.929(c)(i)-(vii). Additionally, SSR 96-7p provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Here, the ALJ determined that the Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 30.) Specifically, the ALJ discounted Plaintiff's testimony due to the "extremely remote onset for [Plaintiff's] back pain," as there was "nearly a fourteen-year gap between a work-related incident and treatment with Dr. Parry." (Tr. 29–30.) The ALJ also noted Plaintiff's "conservative care many years later," which only included prescription of some

pain medications and Plaintiff's participation in a limited amount of physical therapy. (Tr. 30.) The ALJ finally noted that the Plaintiff's "work history and earnings record is spotty, all of which fails to support his allegations of disability that would preclude all vocational activity" after noting that Plaintiff "testified that he has not worked since the year 2005" and that he was "reportedly employed as a porter, did construction cleanup work, and drove a truck." (Id.) These reasons are sufficiently specific to support the ALJ's credibility determination and are supported by the evidence in the record.

In sum, the ALJ's RFC determination is supported by substantial evidence because the ALJ appropriately weighed the medical opinion evidence in the record and set forth his credibility determination of Plaintiff with sufficient specificity.

### III. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS Commissioner's motion for judgment on the pleadings. The Clerk of the court is directed to enter judgment in favor of defendant and close the case.

**SO ORDERED.**

Dated: February 7, 2019
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE